JAMES KLIEWER, APPELLANT, V. WALL CONSTRUCTION COMPANY ET AL., APPELLEES.

429 N.W.2d 373

Filed September 23, 1988.   No. 87-004.

Rex R. Schultze, of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., for appellant.

David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellee Wall Construction Company.

Boslaugh, White, Caporale, Grant, and Fahrnbruch, JJ.

Fahrnbruch, J.

James Kliewer appeals the summary judgment dismissal of his personal injury claim against the appellee Wall Construction Company. We affirm dismissal of the claim.

While on site to gather data to bid on repairing an explosion-damaged elevator belonging to Shickley Grain

Company, Kliewer was injured by falling timber. At the time of the injury, Kliewer was accompanied by Dale Wall, president of Wall Construction, who had asked the appellant to view the damaged elevator and make a subcontract bid.

Kliewer claims his injuries were proximately caused by the negligence of Shickley Grain Company, Sherbarth, Inc., and/or by Wall Construction Company. This appeal does not involve Shickley Grain Company or Sherbarth. At the hearing on the motion for summary judgment, the court considered the depositions of Wall; Kliewer; Gerald Grote, an owner and manager of the elevator; and Jeffrey B. Asch, Sherbarth's superintendent foreman in charge of removing postexplosion debris. The following account is gathered from the record.

On May 15, 1985, the Shickley Grain Company's elevator in Shickley, Nebraska, exploded. The explosion damaged a structure called "Facility B." Damage included the headhouse's being blown off Facility B and the loosening of that elevator's legs.

After the explosion, Grote contacted Sherbarth, Inc., to clean up the debris in the headhouse. Sherbarth claims it cleaned up the debris in accordance with Grote's directions. Wall, on behalf of Wall Construction, either contacted Grote or was contacted by Grote with respect to submitting a bid for reconstruction work on the elevator.

Grote gave Wall permission to look at the premises and make a bid. Wall visited the elevator about a week after the explosion. During that visit, Wall did not go into the damaged facility, but climbed an adjacent grain bin to view the damaged headhouse. Thereafter, Wall told Grote that he would consider making a bid on the reconstruction work. No bid was made at that time.

Within 2 days after his initial visit, Wall and his foreman returned to the elevator to again view the damage. Wall climbed a ladder inside the damaged elevator. He assumed the ladder was dangerous because he knew there had been structural damage due to the explosion. As he climbed, he looked for loose debris but did not observe any.

On May 29, 1985, at Wall's request, Kliewer accompanied Wall to the Shickley Grain elevator. Wall suggested Kliewer make a bid on carpentry repair work on the elevator. On the

40-mile trip to Shickley from Henderson, Nebraska, the two men discussed the condition of the elevator. Kliewer was told that the headhouse was damaged and needed to be rebuilt and that the debris had been removed. Wall also told Kliewer that he had been to the elevator site on two previous occasions and that he had climbed the ladder to the top of the elevator on one occasion.

Kliewer testified that as they approached the elevator, he could see that the roof of the structure was missing. The two men went into the elevator and approached the ladder. Prior to climbing it, Kliewer asked Wall if the ladder was safe. According to Kliewer, Wall's response was, "Well, we've been up that ladder before and a lot of other people have been up and down that ladder, so I guess it's safe." Kliewer testified that Wall implied that the ladder was solid up to the top. Kliewer testified that he was under the impression that the loose debris was cleaned up and that there would not be any trouble with debris, as far as getting to the top of the elevator. Yet Kliewer hesitated climbing the ladder because of the possibility of falling debris.

Wall climbed the ladder. Kliewer considered waiting to climb the ladder just in case something would fall and hit him. Kliewer did not see anything above him, so he decided to follow Wall up the ladder. While climbing, Wall did not see any loose debris. When Wall reached the top of the ladder, Kliewer was approximately 20 feet below him.

Kliewer heard a commotion above him. Looking up, he saw timber coming toward him. He covered his head with his right arm to protect himself. A piece of wood fell and struck Kliewer on his right arm. Kliewer suffered a fractured arm and neck injuries. The injured man described the wood as two 2 by 6 boards nailed together, approximately 6 feet long, with another piece of lumber attached to them perpendicularly.

Upon analysis, in his second amended petition, Kliewer claims that Wall Construction was negligent under two theories: (1) premises liability; and (2) negligent misrepresentation. On appeal, Kliewer claims that the district court erred in failing to find liability under those two theories. Kliewer also claims that the district court erred in failing to view the evidence presented to it in a light most favorable to the party against whom the

motion was directed, and in failing to give the plaintiff the benefit of all favorable inferences which may be reasonably drawn from the evidence.

"In considering a motion for summary judgment, the evidence is to be viewed most favorably to the party against whom the motion is directed, giving him or her the benefit of all favorable inferences which may reasonably be drawn from the evidence. Summary judgment is proper when pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. . . ."

*Wells Fargo Ag Credit Corp. v. Batterman, ante* p. 15, 15-16, 424 N.W.2d 870, 871 (1988).

With respect to premises liability, Kliewer alleges that the timber was a condition upon the premises which Wall knew of, or in the exercise of reasonable care should have discovered, and which involved an unreasonable risk of harm to the appellant. Kliewer alleges Wall had a duty to use reasonable care to make the premises safe for him or to give him adequate warning to allow him to avoid harm. Additionally, Kliewer claims that the appellee Wall Construction failed to inspect the ladder and leg shaft to determine if there was loose debris which might fall onto persons using the ladder.

The occurrence of an accident which causes injury and does damage does not create a presumption or authorize an inference of negligence. *Wilson v. North Central Gas Co.*, 163 Neb. 664, 80 N.W.2d 685 (1957).

For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty. *Tiede v. Loup Power Dist.*, 226 Neb. 295, 411 N.W.2d 312 (1987); *Holden v. Urban*, 224 Neb. 472, 398 N.W.2d 699 (1987). It is axiomatic that the burden of proving negligence is on the party alleging it and that merely establishing that an accident happened does not prove negligence. *Himes v. Carter*, 219 Neb. 734, 365 N.W.2d 840

(1985); *Porter v. Black*, 205 Neb. 699, 289 N.W.2d 760 (1980).

Kliewer claims he was an invitee or subinvitee of Wall Construction on the premises at the time he was injured. In law, an "invitee" is a person who enters on the premises of another in answer to the express or implied invitation of the *owner* or *occupant* on the business of the owner or occupant for their mutual benefit. See, *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966); *Lindelow v. Peter Kiewit Sons', Inc.*, 174 Neb. 1, 115 N.W.2d 776 (1962). If Kliewer was an invitee of Wall Construction, and if Wall Construction was the owner or occupant and in control of the premises, then Wall Construction owed Kliewer the duty to use reasonable care to keep the premises safe for his use. See, *Tiede v. Loup Power District, supra*; *Neff v. Clark*, 219 Neb. 521, 363 N.W.2d 925 (1985). The appellant had substantially the same knowledge concerning the condition of the elevator as Wall. Kliewer also had experience with elevators that had exploded. Wall had no reason to expect that Kliewer would fail to protect himself from any obvious danger. Thus, this case does not fall within the rules of *Carnes v. Weesner, ante* p. 641, 428 N.W.2d 493 (1988), or *Corbin v. Mann's Int'l Meat Specialties*, 214 Neb. 222, 333 N.W.2d 668 (1983). "Ordinarily a person who is not the owner and is not in control of property is not liable for negligence with respect to such property." 65 C.J.S. *Negligence* § 94 at 1051 (1966). See, also, *Wilson, supra*. "[T]he person in possession of property ordinarily is in the best position to discover and control its dangers, and often is responsible for creating them in the first place." Prosser and Keeton on the Law of Torts, *Owners and Occupiers of Land* § 57 at 386 (5th ed. 1984). We look to the record to determine whether Wall Construction was in possession and control of the elevator at the time Kliewer was injured.

In *Wilson, supra* at 667-68, 80 N.W.2d at 687, this court held:

It was indispensable to any recovery . . . that appellant show by evidence that appellee was at the time of the accident in control of the premises upon which appellant was injured. . . . "The burden was upon the plaintiff to establish that the contractor was yet in charge and control of the work at the time of the accident."

Quoting *Haynes v. Norfolk Bridge & Construction Co.*, 126 Neb. 281, 253 N.W. 344 (1934).

In *Wilson, supra* at 668, 80 N.W.2d at 688, the court also held:

> There is no proof in this case that appellee was in the occupancy or control or that it had any relationship, duty, or right whatever at the time of the accident in reference to the premises upon which appellant fell and was injured or in reference to any instrumentality thereon.

As in *Wilson*, there is no evidence that Wall Construction was in control of or had any right over the premises where and when Kliewer was injured. Wall Construction was not the possessor, owner, or occupier of the elevator. It had no contractual relationship with the elevator's owners. Dale Wall was there merely to evaluate the property in preparation of submitting a bid for repair work. As a matter of law, Kliewer cannot be said to be an invitee of Wall Construction on the premises.

The appellant argues that the case of *Isler v. Burman*, 305 Minn. 288, 232 N.W.2d 818 (1975), supports his position regarding premises liability. *Isler* is also cited in support of Kliewer's claim regarding negligent inspection. The duty to inspect premises is not a separate tort, but is one of the elements of premises liability. *Isler's* facts do not sufficiently parallel the facts of Kliewer's case to be controlling.

*Isler* involved a negligence action brought to recover damages for personal injuries resulting from a snowmobile accident. One of the defendants was Constance Evangelical Free Church, sponsor of the snowmobiling party the plaintiff was attending as a guest when she was injured. After trial, the jury returned a verdict finding the church negligent. The verdict was affirmed by the Minnesota Supreme Court. In *Isler*, the church obtained permission to use a farm for the snowmobile party. The church youth director was responsible for organizing and supervising the event. On the day of the party, the youth director inspected trails to determine whether there were any hazards or dangers in the area where the snowmobiling would take place. That night at the party, Isler was injured when the snowmobile on which she was riding crossed a ditch on an established trail. Apparently, several other snowmobiles had

crossed the same ditch without incident that night.

The *Isler* court held that the church was a *possessor* of the property. The court relied on Restatement (Second) of Torts § 328 E (1965), which defines a possessor of land as

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

There is no evidence that Wall Construction falls within any of those three categories.

Factual differences between *Isler* and the present case rule out its applicability. In *Isler*, the youth director specifically made a safety inspection of the property in anticipation of later use of that property by the church youth and guests. The director knew at the time of the inspection that the church, through him, would be in possession of that particular property during that evening's party.

In the present case, Wall visited the elevator on two occasions to determine the amount of damage, so he could submit a bid for reconstruction work. Wall's purpose in visiting the elevator was not to occupy it, nor did he have any intent to control it or assume any responsibility to inspect the property for the safety of others before Kliewer went onto the property.

Moreover, by the time Wall and Kliewer arrived at the elevator, Wall had shared with the appellant the information he had regarding the damaged facility. Kliewer had substantially the same knowledge about the condition of the property as did Wall. Kliewer testified he also knew about the explosion from watching pictures on television. In *Isler*, the youth director did not convey the results of his inspection of the property to the youths who were to use the property that evening. They relied on his inspection and determination of safety. The youth director assumed the specific duty of inspecting the property for the safety of Isler and other youths in the party. Wall Construction did not assume the responsibility of inspecting the

elevator for Kliewer's safety. Under the facts, Wall Construction had no duty to do so.

Also distinguishable from the present case is *Merritt v Nickelson*, 407 Mich. 544, 287 N.W.2d 178 (1980), which appellant cites as supportive of his position. In *Merritt*, the plaintiff was injured while attending automobile races at a track operated by one of the defendants. *Merritt* held that it is unity of premises possession and control that is dispositive for purposes of determining premises liability. The court found that the defendants in *Merritt* owned the land in question as tenants in common, but that one of the owners did not occupy the land at all and did not exercise her right to possession. The court held, "Insofar as [the track operator] became the sole 'possessor' of the land within the meaning of the Restatement . . . he alone owed a duty of care to the invitees who entered the premises." *Id*. at 554, 287 N.W.2d at 181. Clearly, *Merritt* is distinguishable from the case at bar, as the racetrack operator in *Merritt* was in possession and control of the property as an owner.

Assuming, arguendo, that Wall Construction was in possession and control of the property and that Kliewer was on site as Wall Construction's invitee, he still would not be entitled to recover from Wall Construction.

This court has held, " 'If . . . conditions and circumstances are such that the invitee has knowledge of the condition in advance, or should have knowledge comparable to that of the inviter, then it may not be said that the inviter is guilty of actionable negligence.' " *Brandert v. Scottsbluff Nat. Bank & Trust Co.*, 194 Neb. 777, 779, 235 N.W.2d 864, 866 (1975) (quoting *Nance v. Ames Plaza, Inc.*, 177 Neb. 88, 128 N.W.2d 564 (1964)). *Brandert* held that the superior knowledge of the invitor is the foundation of liability, and absent such superior knowledge, no liability exists. See, also, *Collins v. Herman Nut & Supply Co.*, 195 Neb. 665, 669, 240 N.W.2d 32, 35 (1976), where this court held that defendant's liability " 'is predicated on proof of [defendant's] superior knowledge, actual or constructive, of dangers to which invitee is subjected and of which invitee is unaware.' "

On the trip to the elevator, Kliewer and Wall discussed the

condition of the elevator, including the nature of the damage and the cleanup effort that had taken place. Damage from the explosion was evident to Kliewer upon his arrival at the elevator. He testified that he was aware of the powerful force of grain elevator explosions. Based upon that, he recognized the possibility of loose debris or "something on the top that I hadn't seen yet." Kliewer testified that he had even considered waiting until Wall had climbed up the ladder before climbing himself to avoid "anything falling and hitting me from above." Kliewer nevertheless "decided to climb the ladder behind Dale." It is obvious that Kliewer was conscious of the possibility that something he did not know about could cause him harm on the way up the ladder. Kliewer was fully aware that the elevator was damaged and that there was risk involved in going into the elevator to obtain data to submit a bid.

There is no evidence in the record that Wall possessed superior knowledge, actual or constructive, of which Kliewer was unaware. Because both Kliewer and Wall were on the premises for the same purpose, there is no basis for finding that Wall was under a greater duty than Kliewer to know or ascertain the true condition of the damaged elevator. See *Nance, supra*. In light of his testimony, Kliewer had a duty to observe and take precautions in the interest of his own safety.

The assignments of error regarding premises liability and inspection of the premises are without merit. Wall Construction, as a matter of law, cannot be held liable for Kliewer's injury on the theories discussed.

In his second amended petition, appellant claims that Wall Construction was negligent in representing to Kliewer that "the ladder and leg shaft were safe and that there was no danger in using said ladder to climb to the top . . . ." The actual language used by Wall to Kliewer states, "Well, we've been up that ladder before and a lot of other people have been up and down that ladder, so I guess it's safe."

To constitute a false representation, a statement must be made as a statement of fact, not merely the expression of an opinion. *Circle 76 Fertilizer v. Nelsen*, 219 Neb. 661, 365 N.W.2d 460 (1985); *Maser v. Lind*, 181 Neb. 365, 148 N.W.2d 831 (1967); *Beveridge v. Miller-Binder, Inc.*, 177 Neb. 734, 131

N.W.2d 155 (1964).

Wall's statement was nothing more than his opinion that it was safe to climb the ladder. Wall's utterance was not a statement of fact and, therefore, cannot be a false representation. The appellant's assignment of error regarding misrepresentation and untruthfulness of the statement is without merit.

Finally, we conclude that in any event, the appellant cannot recover from Wall Construction as a matter of law because the appellant assumed the risk of injury. Wall Construction advanced that defense in its answer.

" ' " 'One who knows of a dangerous condition, appreciates its dangerous nature, and deliberately exposes himself to the danger assumes the risk of injury from it.' " ' " *Utsumi v. City of Grand Island*, 221 Neb. 783, 787-88, 381 N.W.2d 102, 105 (1986); *Rodgers v. Chimney Rock P.P. Dist.*, 216 Neb. 666, 345 N.W.2d 12 (1984). In *Utsumi*, the court found that while assumption of the risk is normally a question for the jury, where the facts are such that reasonable minds can draw but one conclusion, a directed verdict is proper. The same standard governs a motion for summary judgment.

From the evidence, reasonable minds can draw but one conclusion: Kliewer had prior knowledge of the potential danger of injury in climbing the elevator ladder. He assumed the risk of injury. Thus, Kliewer is barred from recovering from Wall Construction as a matter of law.

We have considered all appellant's assignments of error and have concluded that there is no genuine issue as to any material fact and no merit to the assignments. Summary judgment in favor of Wall Construction was appropriately granted.

AFFIRMED.